### CELLULOID MANUF'G Co. v. CHROLITHION COLLAR & CUFF Co.

(*Circuit Court, S. D. New York.* November 10, 1885.)

PATENTS FOR INVENTIONS—CELLULOID COLLARS AND CUFFS—PATENT No. 200,
939 SUSTAINED.
On rehearing former opinion (23 Fed. Rep. 397) adhered to.

Motion for Rehearing.

*Edmund Wetmore, Edwin M. Felt,* and *John P. Adams,* for the motion.

*Frederic H. Betts, William D. Shipman,* and *J. E. Hindon Hyde,* opposed.

Before SHIPMAN and COXE, JJ.

COXE, J. The argument that the patent in controversy was anticipated and void for lack of invention was fully presented upon the hearing of this cause in February last. 23 Fed. Rep. 397. It is now reasserted with much force and ability, but the foundation upon which it rests is identically the same. No additional facts are presented, no new evidence has been discovered, the record is the same and the premises are the same, but it is contended that the conclusion drawn from them was erroneous, and should now be reversed. To do this the court must hold that the Sanborn invention is invalidated by a patent, which was decided, after careful consideration, to be no barrier to the complainant's rights to recover. The contention of the defendant, both orally and in the brief, is based almost wholly upon the specification of the English patent granted to Alexander Parkes. In view of the prominence thus given to this patent we have again examined its provisions, and are clearly of the opinion that it does not defeat the Sanborn invention in either of the particulars suggested. The Parkes patent was introduced by the defendant with scarcely a word of explanation. The defendant's record is not before us, but, as the facts are now recalled, the only evidence on the subject came from the lips of the complainant's expert witnesses. From their uncontradicted testimony it appeared that there was a vast discrepancy between what Parkes actually accomplished and what he thought

he had accomplished.    No accusation of illiberality to himself, in the number and scope of his claims, can be sustained against Parkes; he, certainly, was not disposed to underrate the magnitude of his own discovery, yet, when brought to the test of actual experiment, it appeared that the compounds produced by him were utterly worthless for any practical purpose as applied to collars and cuffs.

The court properly construed the patent as being not for a collar or cuff, but for a fabric to be used in the manufacture of collars and cuffs, and other similar articles.    Parkes had no such fabric in mind. The idea may have suggested itself vaguely to his imagination, but he failed utterly to reduce it to a reality.    True, he uses the word "sheets," but he refers to the sheets produced by the process of solution previously explained by him.    The Hyatt sheets were not known till 20 years afterwards, and it is indisputably proved that for these nothing that Parkes describes can be successfully substituted.    The problem was by no means solved when Hyatt produced his celluloid sheet.    Could it be used for collars and cuffs?    That it could not be used alone is clearly demonstrated.    Many difficulties presented themselves which were overcome by Sanborn and his co-inventors.    What they did in the adaptation of this new and untried material to a fabric which can be used for collars and cuffs, required, in our judgment, the exercise of the inventive faculty, and not mechanical skill merely. It was, to use the language of the supreme court in *Smith* v. *Goodyear*, 93 U. S. 494, a new fabric, "differing from all that had preceded it, not simply in degree of usefulness and excellence, but differing in kind, having new uses and purposes."    We do not regard this as a great invention, but we do consider it a very useful one.    The patentees supplied a public need.    They made what men wanted.    They produced what had not been produced before, and they should not be deprived of the fruits of their invention by the vague and general language and nebulous claims of the foreign patents relied on.    To use again a well-worn simile:    A company of sportsmen enter a copse in search of game.    A bird arises, seen plainly by a few; the others catch but a passing glimpse.    Several shots are fired, some wide of the mark, others dangerously close.    The pursuit begins, and continues with varying fortune.    The coveted bird is wounded by one of the sportsmen, and is almost within the grasp of another; but he, alone who finally brings down the game is entitled to place it in his pouch.    The motion must be denied.

SHIPMAN, J., concurs.