GOSS PRINTING-PRESS CO. v. SCOTT.

(Circuit Court of Appeals, Third Circuit. July 1, 1901.)

PATENTS—ANTICIPATION—PRINTING PRESSES.
　　The Firm patent No. 415,321, for an improvement in rotary printing machines, reconsidered on the question of anticipation, and *held* not anticipated and valid.

On Petition for Rehearing. Denied.

For former opinion, see 108 Fed. 253.

Before DALLAS and GRAY, Circuit Judges, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge. The petition for rehearing states: "We should not trouble the court with the motion for rehearing were we not convinced, from many careful readings of the opinion, that the court overlooked a certain press of whose existence there is no dispute, and certain earlier patents," etc. The press here referred to is the Cleveland Leader press. That press was not overlooked, and we are at some pains to call attention to the careful language used, which, while not mentioning such press by name, wholly differentiates it from Firm's device, and shows that it could not infringe, and did not anticipate, such device. It was not, therefore, specifically referred to in the opinion. Not only was particular attention called to the circumferential page-form heading in the Globe press: viz. "In the main press, a four-plate wide web was printed on both sides, four pages abreast, the column rules running around the cylinders; consequently the printed columns were parallel with the web sides;" but circumferential page-form heading was pointed out as one of the features of Firm's device. "It will be noted," says the opinion, "that in this device the page forms are all headed circumferentially, and in the same direction around the form cylinders; that the webs move in the same vertical plane along ultimately converging paths. The same vertical plane intersects the central longitudinal margin of all the webs on any line parallel therewith, from the time the webs leave their respective rolls to the point where they converge, printed and registered. It is this feature that gives such a type of press in the art the name 'straight line' or 'straight run,' as distinguished from 'angle bar,' or presses where the web is deflected and transferred to a different vertical plane." The "type of press" could only refer to one (and the language could have no other meaning), where, as noted, "the page forms are all headed circumferentially." Having thus noted that the feature of circumferential heading existed in the Globe Democrat, and was an element of Firm's claim, the opinion showed that the advance made by Firm was in eliminating the angle bars, not from every type of press, but from one having circumferential page-form heading. Thus the court says: "But Firm conceived the idea of printing his whole paper by the same simple, straight-ahead method, so followed by one of the Globe webs." Now the method followed in printing the web in the Globe

Press was by circumferential page-form heading, and that only, and the general expressions in the opinion, which counsel conceive apply to transverse page-form presses, should not be so read. Both by the context and the express language used, such general language should be understood as applying to those presses in which the page forms were circumferentially headed. The words used by the court in describing Firm's device, "The relative arrangement and relation of the forms on the several cylinders need not here be detailed," had no reference to the transverse or to the circumferential heading of the page form, but to the relative relation of the forms to each other, so as to secure the proper registering of the pages. So, also, were the Nicholls specifications not overlooked in the case. Indeed attention was called to them specially by the opinion of the court below:

"The Nicholls provisional specifications, filed in the British patent office July 14, 1870, and January 12, 1871, while strongly suggestive of the combinations of claim 7 of patent No. 415,321 and claim 6 of patent No. 410,271, cannot be held to have anticipated them, whatever may have been the effect of those specifications on the state of the prior art."

In our opinion we say:

"We are then brought to the question whether the combination here shown was novel, useful, and patentable. That it was novel, the court below found, and our research in the art leads us to the same conclusion."

It will thus be seen while they were not referred to by us by name, they were by reference. We may add, however, that in them only general language was used, and an intent announced by the patentee to occupy a general field. But such paper intent never materialized in plans or specifications. On the important element of form heading no light is thrown. Within the scope of the general language used, opposing experts have constructed widely different types of presses. If the light thrown by Nicholls' provisional specifications on the art 30 years ago met the test laid down by the court in reference to a prior foreign patent, that it must be "sufficient to enable those skilled in the art to understand the nature and operation of the invention, and to carry it into practical use," and "that it must be an account of a complete and operative invention, capable of being put into practical operation" (Seymour v. Osborn, 11 Wall. 516, 20 L. Ed. 33), it is inconceivable that the device suggested would not have been seized upon in the 20 odd years ensuing before Firm's patent, and embodied in a practical press. The fact that it did not so instruct press builders proves the disclosures were not sufficient to so instruct. "Whatever," says the court in Seymour v. Osborn, quoted above, "may be the particular circumstances under which the publication takes place, the account published, to be of any effect to support such a defense, must be an account of a complete and operative invention, capable of being put into practical operation." In closing we deem it proper to say that in view of the size to which oftentimes in patent cases the zeal of counsel and the ingenuity of experts unduly swell records and briefs, so called (in this case the record contained 2,200 pages and one of the briefs 484 pages), it is not to be expected that courts, and especially appellate ones, will follow the lead thus

set, and discuss every question raised. We consider the controlling features in this case have been sufficiently adverted to, and the petition for rehearing is refused.