DAYLIGHT GLASS MFG. CO. v. AMERICAN PRISMATIC LIGHT CO.

(Circuit Court, D. New Jersey. May 12, 1905.)

1. PATENTS—INFRINGEMENT—MACHINE FOR MAKING PRISMATIC GLASS.

> The Cummings patent No. 695,282, for a machine for making prismatic glass, discloses invention, and is valid. Also *held* infringed.

2. SAME—VALIDITY—PRISMATIC GLASS WINDOWS.

> The Cummings patents Nos. 695,283, 695,284, and 710,434, covering methods of making panes or windows from prismatic glass, and for such windows themselves, are void as embodying only the function of a machine invented and patented by the patentee, or for lack of invention in view of the prior art.

In Equity.

Robert N. Kenyon, Alan D. Kenyon, and Thomas B. Harned, for complainant.

Hector T. Fenton, for defendant.

CROSS, District Judge. There are four patents in suit in this case, as follows: Nos. 695,282, dated March 11, 1902, for "a machine for making prismatic glass windows"; No. 695,283, dated March 11, 1902, for "an improvement in methods of making sheets or panes of prismatic glass for use in making prismatic windows"; No. 695,284 dated March 11, 1902, for "improvements in methods of making prismatic windows"; and No. 710,434, dated October 7, 1902, for "improvement in prismatic glass windows." All of the above patents were issued to one George K. Cummings, and by him assigned by various mesne assignments to the complainant. The bill alleges infringement of these letters patent, and seeks the usual relief in such cases. The several patents will be considered in the order above mentioned.

No. 695,282 has 13 claims, which relate to "a machine for rolling sheets of glass provided with ribs of annular or prismatic form, from which panes of prismatic glass, or what are known as 'prism lights,' of any desired shape, can be cut." Claims 1, 2, and 3 are alone involved. The machine shown and described in the patent is provided with a revolving roller, and a bedplate upon which molten glass is poured, and which supports the melted glass against the roller as it revolves. The revolving roller may have on its surface ribs which are parallel with one another and parallel with the direction of motion, or the roller may be smooth and the bedplate may be provided with a series of ribs which are parallel with one another and parallel with the direction of motion of the roller; but in either case the plane of the ribs is parallel with the direction of motion of the movable part of the machine. The ribs are made to correspond in form with the depressions which it is desired to produce in the plate of glass, and, preferably, are triangular in cross-section and with a cutting edge at their outer angle. The roller is provided with smooth bearing at its ends, and also with gears attached to hand wheels by which the rollers are made to revolve over the table or bedplate. The patentee described the operation of the machine as follows:

"The roller and table are first heated by any suitable means, so as to be brought to the proper temperature for operating upon the glass. This can be done by simply pouring a certain amount of molten glass upon the roller and table until they are properly heated. If the roller and table are used in a cold state, they will be found to chill the glass, and thereby to injure the product. The roller having been moved to one end of the table, the molten glass is poured on the table in front of the roller, a sufficient quantity being supplied to the table to make a full sheet of prismatic glass. The surface of the glass which comes into contact with the ladle, and also with the air and with the table, is chilled to some extent. In order to make the mass of the glass as nearly homogeneous as possible in temperature, the glass is first stirred on the table by any suitable form of stirrer. By means of the hand wheels, II, the roller is then rolled along the table, so as to roll the glass into the form of a sheet of prismatic glass. As the roller moves over the table and bears down upon the glass, a sufficient quantity of the glass passes underneath the roller to fill up all the space between the table and the roller, filling up the triangular grooves or depressions between the ribs on the roller, and forming complete and perfect and clean-cut prismatic projections on the upper surface of the glass plate.

"As the ribs on the roller are continuous and have cutting edges at their outer angles, the edges of the ribs act as continuous and unbroken knife edges to cause the upper layer of the glass, as it passes under the roller, to be divided into separate portions or streams, that pass through the separate grooves or channels formed in the surface of the roller by the projecting ribs. There are no square surfaces or shoulders against which the glass strikes, or which have to be forced down into the glass, as a result of which the surface of the glass would be broken or torn apart. The glass first encounters the knife edge of a rib, which readily divides the glass mass, causing one part to flow into the channel or groove on one side of the rib, and the other part to flow into the channel or groove on the other side of the rib. The sides of the adjoining ribs, forming the walls of a particular groove in the roller, then act as guides to cause the glass to flow into the proper channel and assume the proper form. As the roller revolves, the walls of the grooves act to draw the glass through the grooves under the roller, and to cause it to fill the grooves thoroughly and form full and perfect prismatic projections or ribs on the surface of the sheet.

"As the prismatic ribs on the roller are continuous, the ribs on the finished plate are continuous and uniform.

"As the plane of the rib on the roller is perpendicular to the axis of the roller and is parallel with the direction of motion of the roller, the rib passes into and out of the glass with little friction, and does not distort the glass or the prismatic ribs formed thereon as the two are separated or break contact.

"As the ribs on the roller are parallel, the glass plate is provided with prismatic projections which are not only continuous, but also equal in size and of a regular and uniform size throughout, and which have a perfectly sharp true edge free from dents and imperfections, such as are likely to occur in a molding process.

"In the form shown in Fig. 4, in which the table is provided with ribs placed directly opposite the ribs of the roller, the glass is forced into the grooves or depressions formed by these ribs, and a plate of glass is thereby formed; having projections or prisms on its under surface, also directly opposite the prisms on the upper surface of the plate.

"When the glass has been rolled into a plate in the manner described, the plate is transferred to a carrying wagon or other suitable device, and conveyed quickly to the leers, where it is properly annealed."

There is a device for determining in advance the thickness of the glass, and, as already stated, the roller can be made to travel over the table, or the table can be made to travel under the roller. It is also provided that the ribs producing the prisms in the glass need not necessarily be of the same form or angle in cross-section, so long as they are formed to produce suitable shaped prisms in the glass. The evidence, however, establishes that neither of the plane faces of the ribs forming the prism should be at right angles to the plane of the table, for, if so, a proper prism will not be formed, nor can the sheet of prismatic glass be subsequently removed from the bedplate without destroying the prismatic angles of the glass; and for the same reasons the prismatic ribs must run in a direction parallel with the direction of the traverse movement of the roller.

The defendant denies infringement, and also claims that the patent now under consideration was anticipated by the prior art, and that in view of the prior art the complainant's machine shows no novelty or invention.

It may be said at this point that, prior to the invention of Cummings' machine, prismatic glass was produced by means of molten

glass poured into molds of the desired form and then submitted to pressure, the mold being so designed as to form upon one surface of the tile prismatic angles. The tiles were usually of small size, generally 4x5 inches square, although there is testimony showing that they sometimes were produced in sizes of a foot square and upwards. The tiles, however, were usually quite thick, and, if the size of the tile were increased, its thickness was proportionately increased.

Consideration will now be given to various machines which the defendant alleges anticipate the complainant's. The Drummond patent is a British patent issued in 1886. It does not show any machine, and the only reference he makes to a machine is as follows:

"I produce such glass either by rolling it on a table whose surface is suitably grooved or formed to serve as a mound to produce the requisite prismatic or pyramidal pattern upon the lower surface of the glass, over whose upper surface I run a plain roller in order to obtain an approximately regular thickness of sheet; or I may employ prismatic or pyramidally grooved rollers to roll out the glass sheet with ridges of prismatic or pyramidal formation upon the upper surface, in which case the surface of the table is smooth."

It is obvious that the description of the machine here given is, to say the least, vague and indefinite. It cannot be said to describe a machine at all; certainly the machine does not show the elements of the Cummings machine, or set them forth in the same combination to accomplish the same result; nor is every element of his patent found in the alleged anticipating patent. The Drummond patent does not describe parallel prismatic ribs on the roller or bedplate running in a direction parallel with the traverse movement of the roller and bedplate relatively to each other, nor does it describe prismatic ribs such as, under the evidence, are capable of forming prismatic projections in the glass adapted to being used for the purpose for which prismatic glass is made. It is not disputed in the case that the prismatic ribs on the roller or bedplate, as the case may be, must run parallel with the direction of the traverse movement of the machine in order to successfully make prismatic glass, or that, if such ribs run at right angles to such movement or in any degree transversely thereto, the prismatic ribs on the glass would be broken and distorted and the product could not be removed from the machine. Drummond's drawings showing his completed product do not show prismatic glass at all; we think the complainant's experts are right, therefore, in concluding that he was a mere theorist, and that, so far from his patent disclosing the art of making true prismatic glass by rolling it, it rather tended to delay its production, and to befog and mislead any who might seek to follow his directions. None of the forms of glass set forth in his drawings could be made or sold as prismatic glass; they seem rather to represent sheets of ornamental glass—glass that could not have been made without having the ribs on the roller of the machine run transversely to the traverse of the roller, which is contrary to every claim that Cummings makes. It seems unnecessary to set forth at length the testimony which shows that Drummond's

idea was not the idea of Cummings, and that, if the former had any correct notion of the method of making prismatic glass by a machine, he failed to disclose it.

Boughton's patent of 1880 is also a British patent. He does not show any form of machine, but gives certain diagrams intended to show various kinds of glass of prismatic form, and which he claims can be made with his machine. His description of the machine by which such glass is made is not, however, very unlike that given by Drummond, and is quite as crude and imperfect. He discloses, in our opinion, no operative machine, nor does he disclose or show the particular elements of the Cummings machine which the testimony declares make it operative and effective. Much that was said with reference to the Drummond machine applies with equal force to this, since he does not show how the ribs are to be formed on the roller, either as to shape or direction, nor does he show any forms of ribs which can be used to make true prismatic glass. It is manifest that his designs, or some of them, at least, could not be made by any rolling process. Under the evidence, we think that his patent, like Drummond's, tended to obstruct rather than to advance the art of making rolled prismatic glass.

The Walsh patent, issued in 1892, was a machine for rolling plate glass, "wherein, the glass being of uniform thickness throughout, the longitudinal depressions or channels of one face correspond with the longitudinal ribs or elevations on the opposite face, and had for its purpose to obtain uniform density of the glass throughout, and prevent the distortions on the sheet or plate, so as to insure a proper annealing and subsequent elasticity and durability of the plate." His machine in its general outline is not unlike the Cummings machine, but is, after all, a machine for making rolled corrugated glass, and not a machine for making prismatic glass. Prismatic glass could not be made upon it; his chief idea seemed to be to roll glass of uniform thickness, and to make it of uniform thickness in order that it might be more thoroughly annealed. Prismatic glass, unlike the glass he described, varies decidedly in thickness; thick and thin parts alternating in regular and unbroken succession. The product of his machine could not be used for the purpose for which prismatic glass is adapted, and could not be sold on the market for any such purpose. The Walsh machine does not show that either the roller or bedplate has ribs of prismatic form, and he evidently had no thought of prismatic glass; his idea was a plate or glass of a wavy, but not prismatic, form. His patent was cited by the Patent Office, and the objections raised thereon by the experts in that office were met and overcome, and we see no reason upon the evidence to reverse their decision.

We must also consider that notwithstanding the foregoing and other patents cited by the defendant, and which were issued several years prior to the Cummings patent, there was nothing practical accomplished in the way of an operative machine until Cummings came into view, notwithstanding the want of the machine was felt and everywhere recognized, and great reward promised to the one who should first be successful in inventing a practical machine.

The conclusion is inevitable that, however seemingly slight were the changes made by the Cummings machine, they were not evident, and could not have been wrought out by the skilled mechanic; invention was necessary. There is abundant authority to support the above view. Goss Printing-Press Co. v. Scott, 110 Fed. 402, 49 C. C. A. 97; Kirchberger et al. v. American Acetylene Burner Co. et als. (C. C.) 124 Fed. 764–777; Hood v. Boston Car-Spring Co. (C. C.) 21 Fed. 67–69; Celluloid Mfg. Co. v. Chrolithion Collar & Cuff Co. (C. C.) 25 Fed. 482–483.

The Stevens British patent, issued in 1869, relates to the "manufacture or production of straight sheets of glass, whether corrugated or otherwise, formed with irregular surfaces suitable for roofing and for other like purposes; also to the manufacture or production of curved sheets of glass, whether plain, corrugated, or otherwise, formed with irregular surfaces for similar purposes; also to the shaping of other glass articles that have formerly been molded under pressure only." His machine was not intended to make, nor could it make, prismatic glass, nor is there a single word in his claims or specifications which shows he had in mind the making of prism glass; on the contrary so far as he dealt with sheet glass at all by reference to his claims, it will be seen that he was dealing with corrugated glass; no parallel ribs of prismatic form are disclosed on the roller, and the product of the machine is quite like the product of the Walsh machine.

The Soper patent, 1897, the Basquin patent, 1897, and the Cummings patent, 1897, need not be discussed at length; it is apparent that no machine for making prismatic glass is disclosed by either of them. A word as to defendant's Exhibit No. 7, which discloses ribbed glass, but not prismatic glass. The ribs on it are very small, scarcely discernible with the naked eye; it is ornamental rather than prismatic glass; it does not have the quality of confining and directing rays of light in any predetermined manner, but rather breaks up and obstructs the passage of light. The same can be said of the other glass exhibits offered by the defendant; they are all figured or ornamental rolled glass, with a use entirely dissimilar from that of prismatic glass; they have roughened surfaces, and are intended to destroy or lessen the transparency of the glass; the kind of glass to which they belong had been on the market for many years, and, had it even suggested the manufacture of prismatic glass in larger panes or sheets, it certainly would have been made in that form, instead of the tile form long before it was; perhaps the chief obstacle lay in the fact, as some of the witnesses say, that it was generally believed in the art that prismatic glass could not be successfully made by rolling. In Albright v. Langfield (C. C.) 131 Fed. 473, 475, the court says:

"It is always possible, where an inventor has made an improvement upon a familiar article of simple mechanism, and the improvement only involves changes and additions which afterwards seem simple and unimportant, to allege want of invention, or the result only that which the ordinary mechanic skilled in that particular art could have seen; yet where the difficulties and objections overcome by this improvement, however slight, have been endured by the public for a long time, and numerous efforts have been made to

overcome them, without complete success, when a patent is granted for an improvement in that particular article which does overcome such former difficulties and objections, and it has immediately gone into use, the courts have, as a rule, found in favor of the inventor, and sustained the patent."

Then follow numerous citations of authorities.

For the reasons above given, I think the complainant's patent No. 695,282 is valid, and I also find that it has been infringed by the defendant.

Of the three remaining patents in suit, 695,283 is for making panes of prismatic glass, 695,284 is for making complete prismatic windows, and the third (No. 710,434) is for a completed prismatic glass window itself. Of the first of these three patents, claims 1, 2, 4, 5, 6, and 7 are involved; of the second, claims 1, 2, 3, and 5; and of the third, all of the claims.

The defendant contends that the first two of the foregoing patents are absolutely void, since the alleged methods cannot be distinguished from the function of the machine No. 695,282; and, further, that they are both for substantially the same thing, and that the later of the two is therefore defeated by the earlier; and he further claims that all three of the patents are void for not showing novelty and invention, and because of the prior art.

In discussing these patents, it must be borne in mind that Cummings claimed that his machine patent was intended for rolling sheets of glass provided with ribs of angular or prismatic form, from which panes of prismatic glass, or what are known as "prism lights," of any desired size or shape, could be cut. He says:

"These sheets of glass can be made of a large size, capable of being cut into panes of any desired shape and size, or they can be made of any desired size."

We have, then, a machine which, if it does what it is claimed it can do, gives us as its product a sheet of prismatic glass, of any desired size or form, from which panes of any desired size or shape can be readily cut. Cummings thereupon secured three patents: (1) For making panes out of this glass, (2) for making windows out of the panes, and (3) for the window itself.

Given, then, the machine and its product, would not any glass manufacturer or person skilled in the art have done just what Cummings claims to do under these patents? The situation is this: The older tile form of prismatic glass was somewhat thick and could not be so readily cut as it could have been if thinner; nevertheless the evidence indubitably shows that it could be cut, and had been cut not only parallel with the grooves, but also on curves, and that when so cut it had been assembled and glazed into windows. Now we have a thinner product of the same kind of glass, and yet we are asked to believe that to the skilled mechanic who had overcome the difficulties of cutting thicker glass of the same kind would not occur the idea of cutting the thinner glass into any determinate size or shape, or that, having the idea, he would not possess the skill. The art of cutting glass of all kinds into panes of a larger or smaller size and of different shapes was old, the art of assembling these panes into windows was old, and prismatic windows themselves were old.

Stress is laid upon the fact that the Cummings glass is capable of being cut in a predetermined manner; but how otherwise could it be cut, unless all attempt at design were abandoned and the sheet of glass was simply shattered? Again, what novelty is there in cutting it by the use of a pattern? Cutting by pattern would suggest itself to the merest tyro in the art, while it is inconceivable that an artisan skilled in the art would for a moment consider or practice any other method. Nor can it be said to be novel, or to comprise invention, to arrange the panes when cut into a window, or to so arrange them in a window that the prismatic projections of all the panes would be parallel. Any one skilled in the art would do that as readily as the patentee; or, if it were desired to have a portion of the prismatic projections running in one direction and a portion in another in order to reflect the light in different directions, that effect also would seem to be quite comprehensible to the skilled mind; anyway, the law of optics would control it. Plate glass, rolled glass, corrugated and factory ribbed glass, and colored glass of various forms have been cut into panes and assembled into windows for an indefinite period of time. Complainant's witness Crawford admits it, and Drummond, Boughton, and Walsh all suggest the use of their glass for such purposes.

Drummond made "large sheets" for glazing or other purposes of glass, having formed upon one side parallel ridges of prismatic cross-section, "*   *   * produced by rolling it on a table whose surface is suitably grooved," and adapted "for roofs and side lights." Boughton's patent was for the manufacture of sheets of glass "(which may be cut into any required shape or size)," having formed upon them, and forming one piece with them, certain projections or ridges of such form or forms as to reflect the light falling upon them in any required direction or directions, which he calls "an improved form of window glass." Soper's patent calls for ornamental "prism lights," and he claims that designs of any suitable description might be formed out of the "prism lights," "the prism being utilized to distribute the light or direct it in any desired direction," and he suggested the use of prisms of different sizes, "the entire design being produced only when the prism lights are bound together." The Basquin patent is also for window lights. It is manifest that the making of window lights and windows from glass of prismatic form was not new, any more than was prismatic glass itself; all were old, and the most that could be said in favor of any of them is that possibly some kinds could be cut and shaped with less difficulty than other kinds.

It must be borne in mind that none of these patents is for a design; their purpose, however, has already been sufficiently indicated. There is a great deal of "ballast" injected into the numerous claims made in each of these patents, such as melting the glass, stirring it, annealing it, cutting the sheet into panes, cutting it by patterns, assembling the panes, etc.; but it cannot for a moment be seriously argued that any of these elements are new, or involve invention, or that they have not been times without number used in the art; the record shows plainly that they are not new, and any man skilled

in the art would laugh at such a claim.   As said before, to our mind the three patents do not, nor does either of them, suggest anything new, novel, or inventive.   The patents have not been considered separately, for it seemed unnecessary, and would unduly prolong this discussion; but in view of the prior art, and assuming a reasonable degree of common sense to be still extant in the glass manufacturing and glazing business, we deem the patents to be invalid. As was said by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438:

"The design of the patent laws is to reward those who make some substantial discovery or invention which adds to our knowledge and makes a step in advance in the useful arts.   Such inventors are worthy of all favor.   It was never the object of these laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures.   Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention.   It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country without contributing anything to the real advancement of the arts.   It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens, and unknown liabilities to lawsuits, and vexatious accountings for profits made in good faith."

The bill of complaint will be dismissed as to patents Nos. 695,-283, 695,284, and 710,434, and appropriate relief given as to the infringed patent No. 695,282.